David R. Ehrlich (de-9786)
Scott W. Clark (sc- 6137885)
Stagg Wabnik Law Group LLP
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4550
dehrlich@staggwabnik.com
sclark@staggwabnik.com

*Attorneys for Plaintiff*
*Gordon Noel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
GORDON NOEL,                                     Docket No.: 23-cv-3082

                Plaintiff,              **COMPLAINT**

   - against -                                      **JURY TRIAL DEMANDED**

THE CITY OF NEW YORK, and CORRECTION
OFFICERS' BENEVOLENT ASSOCIATION, INC.,

-----------------------------------------------------------------

Plaintiff GORDON NOEL ("Plaintiff" or "Noel") by and through his attorneys, Stagg Wabnik Law Group LLP, as and for his complaint against defendants THE CITY OF NEW YORK ("Defendant" or "NYC"), and the CORRECTION OFFICERS' BENEVOLENT ASSOCIATION, INC. ("Defendant" or "COBA") (hereinafter collectively referred to as "Defendants") state and allege as follows:

### NATURE OF THE ACTION

1.    Plaintiff was a dedicated employee of The New York City Department of Correction for over ten years until he was discharged unjustly in retaliation for taking time away from work to care for his ill parent, a right guarantee by the Family Medical Leave Act. Defendants' action constitutes a blatant interference with Plaintiff's rights pursuant to the Family

and Medical Leave Act ("FMLA") and retaliation for taking a leave to care for an ill parent. Plaintiff also brings this action against Defendants, pursuant to section 301 of the Labor Management and Relations Act of 1947, for discharging him without just cause and in violation of the collective bargaining agreements leave policies. Although the DOC had no basis to discharge Plaintiff, COBA failed to fairly represent him in his efforts to challenge the discharge. Defendants' conduct was willful and showed a reckless disregard of Plaintiff's rights, which caused and continues to cause Plaintiff to suffer substantial economic and noneconomic damages, including severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action under 28 U.S.C. § 1331, as Plaintiff claims violation of the Family and Medical Leave Act, a federal statute, and the Labor Management and Relations Act of 1947, a federal statute.

3.  Venue is proper in this District pursuant to Title 28 U.S.C. § 1391(b) and (c) as Plaintiff's claims arose within this District.

## PARTIES

4.  Plaintiff is an individual residing in Queens County in the State of New York and was employed by Defendants as a Corrections Officer.

5.  Defendant THE CITY OF NEW YORK was and still is a municipal corporation.

6.  Defendant CORRECTION OFFICERS' BENEVOLENT ASSOCIATION, INC. is a domestic not-for-profit corporation organized under the laws of the State of New York with a primary place of business in New York County.

**STATEMENT OF FACTS**

7. On or about April 26, 2012, Plaintiff began working for NYC as a corrections officer. Plaintiff worked as a corrections officer for over ten years where he excelled at his job.

8. Around the summer of 2021 Plaintiff's mother became ill and required help from her son.

9. On or about July of 2021 NYC saw a 300% increase in the number of officers who were skipping out on work without calling in. [1]

10. On or about August 20th, 2021, Plaintiff requested time off to care for his mother, and that request was rejected by officer Hernandez in the personnel department due to a missing warden's signature. Plaintiff never received a former denial letter from human resources.

11. On September 15th, 2021, former Mayor Bill De Blasio passed an emergency relief De Blasio's "emergency Rikers Relief Plan" that attempted to "toughen accountability for AWOL staffers" by issuing a 30-day suspension to those who skip out on work without a justifiable cause. [2]

12. In February of 2022 Plaintiff needed time off to care for his ill mother. As per the policy, Plaintiff submitted a request to be excused from duty between the dates of February 12, 2022, and February 20, 2022.

13. Unlike his August request, this time Plaintiff's request for leave was granted. Plaintiff's request to be excused from duty between February 12, 2022, and February 20, 2022, was stamped "APPROVED.' A copy is attached hereto as Exhibit" A."

14. Once Plaintiff's leave was over, he reported back to work without incident, and continued to work for the Defendants for the next six months.

---

[1] https://www.foxbusiness.com/lifestyle/nyc-mayor-nypd-corrections-officers-rikers-island-crisis
[2] Ibid.

15. On or about September 9, 2022, Plaintiff received a letter from NYC stating that he did not receive approval for the days off in February 2022, and that because the leave was not approved, he was deemed to have resigned from his employment with NYC.

16. Plaintiff immediately contacted the union to address this error, and it was explained to NYC that the leave in February was approved. The plaintiff explained that the warden approved his leave.

17. COBA advised Plaintiff to continue to report to work, which he did. Believing that he sufficiently demonstrated that his leave was approved.

18. On or about October 13th, 2022, Plaintiff received a letter from NYC informing him that the proof he submitted was not sufficient to provide an explanation to NYC, therefore terminating his employment with NYC.

19. Plaintiff continued to explain and show that his leave in February of 2022 was approved by the department. Unfortunately, on October 23, 2022, Plaintiff was forced to relinquish his shield and identification badge, completing his unlawful termination.

20. After his illegal termination, Plaintiff submitted a grievance to the COBA challenging the DOC's improper and unjustified termination.

21. COBA declined to file a grievance on behalf of the Plaintiff, stating that they believed the Plaintiff was absent without leave for more than five days even though his FMLA leave had been stamped approved.

22. COBA did not bring the unjustified discharge to arbitration or otherwise fight to reinstate Plaintiff even though it was perfectly clear that Plaintiff's leave in February 2022 was approved by the warden.

23. The NYC's discharge of Plaintiff violated the collective bargaining agreement because there was no just cause or violation to support the discharge.

24. COBA breached its duty of fair representation by failing to represent and advocate for Plaintiff's reinstatement even though NYC was clearly wrong in claiming that he was AWOL or otherwise did not have an approved leave.

25. NYC's discharge of Plaintiff violated the FMLA because Plaintiff had every right to obtain a leave under the FMLA to care for his sick mother, and NYC discharged Plaintiff because he took a leave in February 2022 to care for his sick mother.

## AS AND FOR A FIRST CAUSE OF ACTION
### (FMLA Interference)

26. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein fully at length.

27. The FMLA entitles eligible employees of covered employers to take unpaid, job-protected medical leave for specified medical reasons for up to twelve weeks per year with continuation of group health insurance coverage under the same terms and conditions as if the employee had not taken leave.

28. Code of Federal Regulations Section 825.301(c) states "when an employee provides notice of the need for FMLA leave, the employer shall provide the employee with notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations."

29. Plaintiff requested leave to care for his ill mother.

30. NYC was an employer covered under the FMLA, and Plaintiff was eligible for up to twelve weeks of unpaid leave to help care for his mother.

31. NYC knew that Plaintiff had requested medical leave to take care of his ill mother.

32. Although NYC knew that Plaintiff needed to care for his ill mother, NYC failed to offer Plaintiff leave under the FMLA in February 2022 and failed to grant his request in August 2021--it did not even formally deny his August 2021 FMLA request.

33. Plaintiff contacted his superiors to request leave under the FMLA, but his August 2021 request was ignored.

34. Instead, even though Defendant, knew of Plaintiff's request for medical leave and attempts to submit papers for FMLA leave, Defendants interfered with that request by ignoring his request of August 2021 and never formally denying his August 2021 FMLA request.

35. Had Defendant not interfered with the Plaintiff's FMLA leave, the Plaintiff would have been granted leave in August of 2021 to care for his mother.

36. In February 2022, Plaintiff notified his superiors that he needed a leave to care for his sick mother and failed to provide him with the paperwork to take such a leave.

37. Because Defendant NYC failed to offer Plaintiff FMLA leave or provide Plaintiff notice of his FMLA rights both in August 2021 and February 2022, Plaintiff was deprived of his right to such leave and Defendant's actions constituted interference with Plaintiff's FMLA rights.

38. Defendant's actions violate the FMLA and Code of Federal Regulations §§ 825.301(a) and (c), and as a result of the violations, Plaintiff was not granted leave in August 2021 and was discharged from his employment in October 2022 because of the days he took off in February 2022 to care for his mother.

39. As a result of this interference, Plaintiff suffered severe emotional distress.

40. Due to the egregious and malicious nature of Defendant's actions, Plaintiff is entitled to an award of punitive damages.

41. Because Defendant violated the FMLA and Code of Federal Regulations, Plaintiff is entitled to attorney's fees and costs.

### AS AND FOR A SECOND CAUSE OF ACTION
### (FMLA Retaliation)

42. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein fully at length.

43. Plaintiff engaged in statutorily protected activity when he took leave to care for his sick mother—a leave for which he had a right to take under the FMLA.

44. Following Plaintiff's exercise of rights protected by the FMLA, NYC retaliated against Plaintiff by discharging him for taking the leave in February 2022 in violation of the FMLA's anti-retaliation provisions.

45. As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Plaintiff was discharged, suffered monetary losses, and experience extreme emotional distress for which he is entitled to an award of monetary damages and other relief in amounts to be determined at trial.

46. Due to the egregious and malicious nature of Defendant's actions, Plaintiff is entitled to an award of punitive damages.

47. Because Defendant violated the FMLA and Code of Federal Regulations, Plaintiff is entitled to attorney's fees and costs.

## AS AND FOR A THIRD CAUSE OF ACTION
## BREACH OF A COLLECTIVE BARGANING AGREEMENT
### Section 301 of the Labor-Management
### Relations Act ("LMRA")
### (29 U.S. Code § 185)

48. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein fully at length.

49. Defendant NYC breached the collective bargaining agreement by discharging Plaintiff for exercising his federally protected right to medical leave and without just cause.

50. On or about June 30, 2021, Defendants NYC, and COBA entered into a contract for the term of March 1, 2019, to February 28th, 2022.

51. For NYC to discharge Plaintiff, it needed to have just cause for the discharge as implied in the Collective Bargaining Agreement attached hereto.

52. Plaintiff was discharged in violation of Article\ XXI, Section 2 because his leave in February 2022 was unequivocally approved by the warden as shown by the stamp on his leave form, yet NYC discharged him anyway—8 months later—incorrectly claiming that the leave was not approved.

53. Defendant in terminating the Plaintiff's employment did not follow the grievance procedure set forth in the collective bargaining agreement.

54. The NYC's discharge of Plaintiff based on taking a leave that was approved by the warden with the stamp "Approved" on the leave form violated the just cause provision of the collective bargaining agreement.

55. Defendant's actions violate Section 301 of the Labor-Management Relations Act.

56. Due to the egregious and malicious nature of Defendant's actions, Plaintiff is entitled to an award of punitive damages.

57. Because Defendant violated Section 301 of the Labor-Management Relations Act, Plaintiff is entitled to attorney's fees and costs.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**BREACH OF FAIR DUTY OF REPRESENTATION**
**Section 301 of the Labor-Management**
**Relations Act ("LMRA")**
**(29 U.S. Code § 185)**

58. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein fully at length.

59. The duty of fair representation requires a union 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.

60. A union breaches the duty of fair representation when it arbitrarily ignores a meritorious grievance or processes it in perfunctory fashion.

61. Defendant COBA breached the union's duty by failing to adequately represent the Plaintiff with respect to his material grievance with Defendant NYC.

62. COBA's conduct has been deficient throughout the grievance and arbitration process.

63. The Plaintiff has a meritorious grievance as the Plaintiff's Request to Be Excused from Duty was approved by NYC.

64. COBA intentionally ignored the fact that the Plaintiff's FMLA leave was granted when they declined to file a grievance for the plaintiff. COBA's lack of action is arbitrary, discriminatory and in bad faith and seriously undermines the arbitral process.

65. COBA, by its agents, employees, and servants, breached its Duty of Fair Representation by failing to represent and address plaintiff's claims that his leave was approved by the DOC yet was discharged anyway.

66. Plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance.

67. Defendant's actions violate Section 301 of the Labor-Management Relations Act.

68. Due to the egregious and malicious nature of Defendant's actions, Plaintiff is entitled to an award of punitive damages.

69. Because Defendant violated Section 301 of the Labor-Management Relations Act, Plaintiff is entitled to attorney's fees and costs.

**WHEREFORE,** Plaintiff respectfully request a judgment against Defendants:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by the federal laws..

B. Reinstating Plaintiff to his position of Correction Officer with the same status and seniority, and with full back pay.

C. Awarding Plaintiff damages in an amount to be determined at trial, but in any event in excess of the jurisdictional limit of any other court that might otherwise have jurisdiction over this matter, plus prejudgment interest, to compensate Plaintiff for all monetary damages, including but not limited to, backpay, front pay, past and future income, wages, compensation, seniority, pension losses, health benefits and other benefits of employment.

D. Awarding Plaintiff damages in an amount to be determined at trial, but in any event in excess of the jurisdictional limit of any other court which might otherwise have jurisdiction over this matter, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and injuries. dignity, emotional pain and suffering and other physical and mental injuries;

E. Awarding Plaintiff damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, but in any event in excess of the jurisdictional limit of any other court which might otherwise have jurisdiction over this matter, plus prejudgment interest;

F.      Awarding Plaintiff punitive damages, in an amount to be determined at trial;

G.      Awarding Plaintiff costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

H.      Awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
       April 13, 2023

                                    Stagg Wabnik Law Group LLP

                                    By: /s/David R. Ehrlich
                                    David R. Ehrlich, Esq.
                                    Scott W. Clark, Esq.
                                    Stagg Wabnik Law Group LLP.
                                    *Attorneys for Plaintiff*
                                    *GORDON NOEL*
                                    401 Franklin Avenue, Suite 300
                                    Garden City, New York 11530
                                    Tel.: (516) 812-4570

TO:    THE CITY OF NEW YORK
        Corporation Counsel
        100 Church Street, 5th Floor
        New York, New York 10007

        CITY OF NEW YORK COMPTROLLER
        One Centre Street
        New York, New York 10007

        CORRECTION OFFICERS' BENEVOLENT
        ASSOCIATION, INC.
        77-10 21st Avenue
        East Elmhurst, New York 11370